NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2772-24

LAMAR BOONE,

     Plaintiff-Respondent,

v.

UNSATISFIED CLAIM AND
JUDGMENT FUND/NEW
JERSEY PROPERTY
LIABILITY INSURANCE
GUARANTY ASSOCIATION,

     Defendant-Respondent,

and

LIBERTY MUTUAL INSURANCE
COMPANY,

     Defendant-Appellant,

and

JEAN E. ZAMOR, LYFT and
LYFT, INC.,

     Defendants.

> **APPROVED FOR PUBLICATION**
>
> **July 24, 2026**
>
> **APPELLATE DIVISION**

Argued May 26, 2026 – Decided July 24, 2026

Before Judges Sabatino, Natali and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-0460-24.

Christopher Cerullo argued the cause for appellant Liberty Mutual Insurance Company (Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP, attorneys; Douglas V. Sanchez, of counsel; Christopher Cerullo, on the briefs).

Jeff Sheppard argued the cause for respondent Lamar Boone.

Mark M. Tallmadge argued the cause for respondent New Jersey Property-Liability Insurance Guaranty Association (Bressler, Amery & Ross, attorneys; Mark M. Tallmadge and Christina M. Zarcone, on the brief).

The opinion of the court was delivered by

BERGMAN, J.A.D.

In this case of first impression, we address whether liability insurance policies issued to Transportation Network Companies ("TNCs") established under the Transportation Network Company Safety and Regulatory Act ("TNC Act"), N.J.S.A. 39:5H-1 to -27, and authorized to operate in this State are required to provide personal injury protection ("PIP") coverage benefits to uninsured pedestrians injured by a TNC vehicle.

Plaintiff Lamar Boone, an uninsured pedestrian, was allegedly struck by the vehicle of Jean E. Zamor while Zamor was operating as a driver for Lyft and Lyft, Inc. (collectively referenced as "Lyft"). The policy issued to Lyft by

2

defendant Liberty Mutual Insurance Company ("Liberty Mutual") provided liability coverage but did not include PIP coverage benefits for uninsured pedestrians like plaintiff. After Liberty Mutual denied plaintiff's claim for PIP medical expense benefits, he sought coverage from the New Jersey Property-Liability Insurance Guaranty Association ("NJPLIGA"), as statutory administrator of the Unsatisfied Claim and Judgment Fund ("UCJF"), which also denied plaintiff's claim.

Thereafter, plaintiff initiated a complaint that sought PIP medical expense benefits from defendants. The trial court denied Liberty Mutual's motion for summary judgment requesting the court to determine as a matter of law that its policy issued to Lyft was not required to cover plaintiff's medical expenses because the TNC statute did not require PIP coverage benefits be provided for uninsured pedestrians. The trial court granted the cross-motions for summary judgment of plaintiff and NJPLIGA and compelled Liberty Mutual to provide plaintiff PIP coverage benefits and ordered the policy be reformed to include PIP benefits to plaintiff. The trial court subsequently denied Liberty Mutual's motion for reconsideration.

Liberty Mutual appeals from the trial court orders denying its motion for summary judgment, denying its subsequent motion for reconsideration and from the orders granting plaintiff's and NJPLIGA's cross-motions. Having considered

the arguments in light of the record and applicable legal principles, we affirm substantially for the reasons set forth in Judge Ralph A. Paolone's well-reasoned written opinion.

I.

The facts and procedural history are substantially undisputed. Zamor's vehicle was insured under a Liberty Mutual "Business Auto" policy issued to Lyft, a TNC authorized to operate in New Jersey. The policy provided liability coverage but did not include PIP coverage benefits for uninsured pedestrians. It is undisputed that on the date of the accident plaintiff did not own a motor vehicle or reside with anyone who owned a motor vehicle. Therefore, he did not have any direct insurance coverage providing PIP benefits to pay his medical expenses in accordance with N.J.S.A. 39:6A-4.

After the accident, plaintiff sought PIP medical expense benefits from Liberty Mutual, which denied his claim on the grounds that its policy did not provide PIP coverage benefits to pedestrians and that the TNC Act did not require such coverage for TNC vehicles. Plaintiff also submitted a claim for PIP benefits to NJPLIGA, as statutory administrator of the UCJF, which denied the claim on the basis that the vehicle involved was being used as a commercial vehicle for ride sharing and was not an "automobile" as defined by N.J.S.A.

4

39:6-86.7 nor was it an "uninsured motor vehicle," as defined by N.J.S.A. 39:6-86.1.

Thereafter, plaintiff filed a complaint against defendants seeking PIP coverage benefits for payment of his medical expenses arising from his injuries. Plaintiff filed a notice of voluntary dismissal as to Zamor and Lyft, leaving defendants Liberty Mutual and NJPLIGA as the remaining principally named defendants.

After completing discovery, Liberty Mutual moved for summary judgment, seeking dismissal of plaintiff's claims on the grounds that the TNC Act exclusively governed insurance requirements for TNCs and TNC drivers, and did not mandate PIP coverage for pedestrians injured by vehicles covered by its policy during prearranged rides. Plaintiff cross-moved for summary judgment, seeking an order granting PIP benefits from either Liberty Mutual or, in the alternative, NJPLIGA. NJPLIGA also cross-moved for summary judgment, seeking a dismissal of plaintiff's claims against it and an order that Liberty Mutual was required to provide PIP benefits.

Following oral argument, the trial court entered orders denying Liberty Mutual's motion, granting plaintiff's motion as to Liberty Mutual, denying plaintiff's motion as to the NJPLIGA and granting NJPLIGA's motion. The trial court issued a single Memorandum of Decision on all motions.

In its decision, the trial court first concluded that under N.J.S.A. 39:6A-2(a), the vehicle Zamor was operating at the time of the accident, "[was] not considered an 'automobile' because it was being used as 'a livery conveyance for passengers.'" Similarly, the court cited the TNC Act at N.J.S.A. 39:5H-2, which "specifically states vehicles used to provide prearranged rides by ridesharing drivers, such as Zamor, 'shall not be considered an automobile . . . while a transportation network company driver is providing a prearranged ride.'"

Thereafter, the trial court, noting that the TNC Act does not specifically address pedestrian PIP coverage benefits, found the Legislature extended this protection under N.J.S.A. 17:28-1.3, which states that "[e]very liability insurance policy issued in this State on a motor vehicle, exclusive of an automobile . . . shall provide [PIP] benefits . . . to pedestrians who sustain bodily injury in the State caused by the named insured's motor vehicle. . . ." Because the trial court concluded that the vehicle in question was not an automobile and that Liberty Mutual provided Lyft with a liability policy on a motor vehicle, it determined that Liberty Mutual was required to provide plaintiff PIP benefits pursuant to the above statutory section.

Additionally, the trial court referenced an order issued by the New Jersey Department of Banking and Insurance ("DOBI") that requires that all commercial vehicle insurance policies contain pedestrian PIP coverage. This

order and N.J.S.A. 17:28-1.3, both were in effect when the TNC Act was adopted, leading the court to conclude that "[t]he Legislature could have expressly exempted pedestrians from PIP benefits in the TNC Act if they intended to exclude pedestrians from said benefits." Thus, the court found that it was clear that "all motor vehicles in the state, exclusive of automobiles, are required to maintain coverage that provides PIP benefits to pedestrians."

The court also addressed the issue of NJPLIGA/UCJF coverage. The court found that under N.J.S.A. 39:6-86.7, the scope of PIP benefits for pedestrians in the UCJF was limited to "automobiles" and, because it had already concluded that Zamor's vehicle was not an automobile, the UCJF was inapplicable.

On appeal, Liberty Mutual contends the TNC Act exclusively governs TNCs and TNC drivers and does not mandate PIP coverage benefits for uninsured pedestrians. Liberty Mutual argues the trial court erred: (1) by determining its policy was statutorily required to be reformed to provide pedestrian PIP coverage to plaintiff, as the TNC Act does not reference or incorporate N.J.S.A. 17:28-1.3; and (2) by determining that a personal vehicle operated by a TNC driver is a commercial vehicle subject to the DOBI Order. Alternatively, Liberty Mutual asserts, for the first time on appeal, that even if

N.J.S.A. 17:28-1.3 applies, it does not require coverage under the factual circumstances herein because Lyft was not the named insured for the vehicle.

Plaintiff and NJPLIGA both assert the TNC Act does not preempt or supersede the statutory mandate of N.J.S.A. 17:28-1.3 and the Liberty Mutual policy must be reformed to include pedestrian PIP coverage benefits. NJPLIGA further asserts that the UCJF is not responsible for payment of PIP medical benefits to plaintiff because the vehicle was not an "automobile" or "uninsured motor vehicle" under the statutes governing the UCJF. Lastly, plaintiff and NJPLIGA contend the trial court correctly held that New Jersey law requires insurers of motor vehicles to provide PIP coverage to uninsured pedestrians struck by an insured TNC motor vehicle, and nothing in the TNC Act exempts TNCs from this requirement.

II.

We are governed by established and well-known legal principles. Our review of a trial court's decision to grant or deny a motion for summary judgment is de novo, and we apply the same standard governing the trial courts. Boyle v. Huff, 257 N.J. 468, 477 (2024) (citing Samolyk v. Berthe, 251 N.J. 73, 78 (2022)). Under these standards, courts should grant summary judgment if it finds that "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-

2(c). "When no issue of fact exists, and only a question of law remains, we afford[] no special deference to the legal determinations of the trial court." Boyle, 257 N.J. at 477 (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)).

We likewise review matters of statutory interpretation de novo. Verry v. Franklin Fire Dist. No. 1, 230 N.J. 285, 294 (2017). Courts "look first to the plain language of the statute, seeking further guidance only to the extent that the Legislature's intent cannot be derived from the words that it has chosen." McGovern v. Rutgers, 211 N.J. 94, 108 (2012).

A.

We first address Liberty Mutual's principal contention that the TNC Act exclusively governs TNCs and TNC drivers, thus other statutes such as N.J.S.A. 17:28-1.3 requiring PIP coverage benefits for uninsured pedestrians are not applicable to the policy issued to Lyft. Liberty Mutual asserts that the TNC Act solely governs Lyft's required insurance coverage, and because the TNC Act does not explicitly require pedestrian PIP coverage benefits, its policy is not required to carry such benefits.

After our de novo review of the record and the applicable statutory provisions, we reject Liberty Mutual's contentions and conclude the trial court correctly determined that N.J.S.A. 17:28-1.3 requires every liability insurance

policy issued in this State on a motor vehicle, exclusive of an automobile, as defined in the statute, to provide PIP coverage benefits to otherwise uninsured pedestrians who sustain bodily injuries, including policies issued to TNCs. Therefore, we conclude the trial court's order reforming Lyft's policy issued by Liberty Mutual based on the foregoing statute was not error.

New Jersey has a long legislative and statutory history enacting compulsory insurance laws. "To reduce the cost of automobile insurance, protect victims of automobile accidents and reduce public expenditures when accidents are caused by judgment-proof tortfeasors," our State has enacted a comprehensive statutory scheme centering on compulsory insurance laws. Perrelli v. Pastorelle, 206 N.J. 193, 201 (2011). "All owners of motor vehicles registered or principally garaged in New Jersey are required to maintain minimum amounts of standard, basic, or special liability insurance coverage for bodily injury, death, and property damage caused by their vehicles." Caviglia v. Royal Tours of Am., 178 N.J. 460, 466 (2004) (citing N.J.S.A. 39:6B-1). Accordingly, "automobile accident victims are not left without the means to recover financially for their injuries from a judgment-proof tortfeasor." Ibid. (citing State v. McCourt, 131 N.J. Super. 283, 286 (App. Div. 1974)).

Building on that requirement, in 1972, New Jersey enacted the New Jersey Automobile Reform Act, N.J.S.A. 39:6A-1 to -35 ("No-Fault Act"), which

further directs all auto insurance policies "include PIP benefits, which guarantee 'without regard to fault,' medical expense coverage for the named insured and members of his or her household." Perrelli, 206 N.J. at 201 (quoting Caviglia, 178 N.J. at 466); see also N.J.S.A. 39:6A-4.

Under N.J.S.A. 39:6A-2(a), an "automobile" is defined as:

> [A] private passenger automobile of a private passenger or station wagon type that is owned or hired and is neither used as a public or livery conveyance for passengers nor rented to others with a driver; and a motor vehicle with a pickup body, a delivery sedan, a van, or a panel truck or a camper type vehicle used for recreational purposes owned by an individual or by husband and wife who are residents of the same household, not customarily used in the occupation, profession or business of the insured other than farming or ranching. . . .

Approximately twelve years after the passage of the No-Fault Act, the legislature enacted N.J.S.A. 17:28-1.3, which provides:

> Every liability insurance policy issued in this State on a motor vehicle, exclusive of an automobile as defined in [N.J.S.A. 39:6A-2(a)], but including a motorcycle, or on a motorized bicycle, insuring against loss resulting from liability imposed by law for bodily injury, death, and property damage sustained by any person arising out of the ownership, operation, maintenance, or use of a motor vehicle or motorized bicycle shall provide [PIP] coverage benefits, in accordance with [N.J.S.A. 39:6A-4], to pedestrians who sustain bodily injury in this State caused by the named insured's motor vehicle or motorized bicycle by being struck by an object

propelled by or from the motor vehicle or motorized bicycle.

[State Farm Mut. Auto. Ins. Co. v. Licensed Bev. Ins. Exch., 146 N.J. 1, 11 (1996) (quoting N.J.S.A. 17:28-1.3).]

More recently, in 2017, the Legislature enacted the TNC Act, which established statewide standards for TNCs—such as Lyft—by outlining various requirements for these companies and their drivers and riders. See N.J.S.A. 39:5H-1 to - 27. In doing so, the Legislature "clearly recognized the commercial and societal value of new technologies that use mobile digital networks to connect customers with service providers." Malzberg v. Josey, 473 N.J. Super. 537, 554 (App. Div. 2022). Pursuant to the TNC Act, a TNC provides access to its "digital network," typically in the form of a cellphone application, to connect a rider with a driver. N.J.S.A. 39:5H-2. In exchange for compensation, a TNC driver uses a "personal vehicle" to provide a "prearranged ride," that is, a ride arranged through the TNC's digital network that begins when a driver accepts the request and ends when the rider exits the vehicle. Ibid.

Under the TNC, a "personal vehicle" is defined as:

[A] motor vehicle that is used by a [TNC] driver to provide prearranged rides and is owned, leased, or otherwise authorized for use by the [TNC] driver. . . . A personal vehicle shall not be considered an automobile as defined in [N.J.S.A. 39:6A-2] while a [TNC] driver is providing a prearranged ride.

A-2772-24

[N.J.S.A. 39:5H-2 (emphasis added).]

The TNC Act "expressly provides that [TNCs] and [TNC] drivers 'shall be governed exclusively by [the Act][.]'" Malzberg, 473 N.J. Super. at 549 (quoting N.J.S.A. 39:5H-26). Liberty Mutual maintains that this language excludes it from compliance with N.J.S.A. 17:28-1.3.

In interpreting the TNC Act, we note that it is a "well-established canon of statutory interpretation" that the Legislature is presumed to know the "judicial construction of its enactments." Johnson v. Scaccetti, 192 N.J. 256, 276 (2007) (quoting DiProspero v. Penn, 183 N.J. 477, 494 (2005)), abrogated on other grounds, Cuevas v. Wentworth Grp., 226 N.J. 480, 506 (2016). Moreover, "[t]he Legislature is presumed to be familiar with its existing enactments and is presumed to intend that its newer enactments be harmonized with the existing ones, in light of the Legislature's purpose." Correa v. Grossi, 458 N.J. Super. 571, 580 (App. Div. 2019). In attempting to harmonize more recent amendments in the context of existing statutory provisions, as always "[w]e will 'strive for an interpretation that gives effect to all of the statutory provisions and does not render any language inoperative, superfluous, void[,] or insignificant.'" Sanchez v. Fitness Factory Edgewater, LLC, 242 N.J. 253, 261 (2020) (second alteration in original) (quoting G.S. v. Dep't of Hum. Servs., 157 N.J. 161, 172 (1999)).

We are unpersuaded by Liberty Mutual's exclusivity argument primarily because the TNC Act does not expressly exclude pedestrian PIP benefits from a TNC policy. Further, under N.J.S.A. 39:5H-2, a TNC vehicle is considered a "personal vehicle" defined as a <u>motor vehicle</u> used by a TNC, and all liability policies issued for motor vehicles are required to carry pedestrian PIP coverage benefits pursuant to N.J.S.A. 17:28-1.3.

We note that both N.J.S.A. 39:6A-2(a) and the mandatory PIP pedestrian requirements of N.J.S.A. 17:28-1.3 were in effect at the time the TNC Act was enacted in 2017. We further note nothing in the TNC Act, including its definition section, N.J.S.A. 39:5H-2, its insurance requirement section, N.J.S.A. 39:5H-10, or its other sections mention or reference coverages when a TNC vehicle is involved in an accident with a pedestrian or specifically addresses the application of N.J.S.A. 17:28-1.3 to policies issued to TNCs.

Although we recognize N.J.S.A. 39:5H-10(b)(2) requires a TNC or TNC driver to carry PIP benefits as required by N.J.S.A. 39:6A-4 when a driver is logged on to the TNC's network but is not providing a prearranged ride, and subsection (c)(2) provides "medical payments in the amount of at least $10,000" to a TNC driver while logged on to the TNC's network and providing a prearranged ride, we conclude these scenarios do not apply to an uninsured pedestrian injured by a TNC vehicle. Although subsection (b)(2) references the

14

requirement of certain PIP coverage pursuant to N.J.S.A. 39:6A-4, we note this statutory section applies to the "named insured and members of his family residing in his household who sustain bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile, or as a pedestrian" and would not apply to uninsured pedestrians such as plaintiff who was not a named insured or the member of a family of a named insured. We also point out that N.J.S.A. 39:5H-10(c) would cover medical expenses up to $10,000 for only the TNC driver and medical expense coverage for any pedestrian is not specifically stated or included.

Additionally, in Malzberg, we noted:

> Specifically, the definitions of "personal vehicle" and "prearranged ride" exclude autocabs, taxis, limousines, autobuses, jitneys, motor buses, other for-hire vehicles, and vehicles used for carpools and van pools. . . . The list of excluded vehicles is important in revealing the scope of the statutory scheme because the [TNC] Act explicitly provides that transportation network companies and drivers are governed exclusively by the Act. N.J.S.A. 39:5H-26. Under this framework, [TNCs] and drivers are not required to register their personal vehicles as commercial for-hire vehicles. N.J.S.A. 39:5H-3. Nor are they required to obtain a license or permit from a county or municipality. N.J.S.A. 39:5H-26. The excluded vehicles, in contrast, remain subject to other statutes, regulations, and local ordinances that govern the licensing and operation of for-hire vehicles used to transport passengers.
>
> [473 N.J. Super. at 548 n.3.]

15

Although Zamor's vehicle is not in the category of "excluded" vehicles under the above statute per <u>Malzberg</u>, we reiterate that N.J.S.A. 39:5H-2 defines a "personal vehicle" as a "motor vehicle," and motor vehicles are subject to the coverage requirements contained in other statutes, specifically N.J.S.A. 17:28-1.3. We further note that the principal "exclusivity" components of N.J.S.A. 39:5H-26 specifically relate to TNC drivers not being required to register their personal vehicles as commercial for-hire vehicles and not being required to obtain a license or permit from a county or municipality.

Further, there is no mention in the TNC statute that insurance companies such as Liberty Mutual that insure TNC vehicles are immune from other statutory requirements required to be followed by all insurance companies doing business in the State of New Jersey as set forth in Title 17, Subtitle 3., titled "Insurance." Title 17 includes provisions that govern all insurance companies in New Jersey, including the formation and approval of insurance companies, Chapter 17; ownership and stock requirements, Chapters 17A-C; and numerous other requirements. We note Title 17, Subtitle 3 includes Chapter 28, "Policy Form and Provisions" that contains N.J.S.A. 17:28-1.3, the relevant statutory provision that Liberty Mutual challenges here.

Liberty Mutual is an insurer under Title 17, not a transportation network company or a transportation network company driver under N.J.S.A. 39:5H-26.

16

Therefore, Liberty Mutual, as an insurer, is obligated to provide auto insurance coverages in compliance with Title 17, including PIP coverage benefits for pedestrians in all policies issued that include liability coverage for any of its insureds, including the subject Lyft policy. Uninsured pedestrians are a specific and separate class of individuals that the Legislature intended to provide No-Fault PIP coverage benefits under N.J.S.A. 17:28-1.3, which we conclude the Legislature intended to work in harmony with the TNC Act.

Any other interpretation would render N.J.S.A. 17:28-1.3 and the No-Fault Act meaningless and would leave medical expenses for uninsured pedestrians injured by a TNC vehicle uncovered by any PIP policy. Under this argument, no PIP medical expense benefits would be paid to uninsured pedestrians struck by a TNC vehicle, which is a situation the Legislature's enactment of the No-Fault Act and N.J.S.A. 17:28-1.3 specifically intended to prevent, i.e., pedestrians that are injured by an automobile being unable to engage in immediate, necessary and reasonable, covered medical treatment.

We gain support for this proposition from our Supreme Court, in Lindstrom v. Hanover Ins. Co., when it stated:

> New Jersey's no-fault compulsory automobile-insurance scheme, found in the [No-Fault Act] must be "liberally construed so as to effect the purpose thereof." N.J.S.A. 39:6A-16. This Court has characterized PIP coverage as "'a social necessity' that should be given

A-2772-24

'the broadest application consistent with the statutory language.'" Darel v. Pennsylvania Mfrs. Ass'n Ins. Co., 114 N.J. 416, 425 (1989) (quoting Amiano v. Ohio Casualty Ins. Co., 85 N.J. 85, 90 (1981)). . . . Such a broad application represents public policy favoring coverage. See Allstate Ins. Co. v. Malec, 104 N.J. 1, 6 (1986)[.]

[138 N.J. 242, 247 (1994), overruled on other grounds by Shaw v. City of Jersey City, 174 N.J. 567, 569 (2002).]

Therefore, we concur with the court's reasoning that the vehicle operated by Zamor was not an "automobile" as defined under N.J.S.A. 39:6A-2(a) and was specifically excluded as such pursuant to N.J.S.A. 39:5H-2 of the TNC Act. Here, we conclude Zamor's vehicle was a "personal vehicle," which is defined as a "motor vehicle" that is used by a [TNC] driver to provide prearranged rides and is owned, leased, or otherwise authorized for use by the [TNC] driver. Ibid. Zamor's vehicle was insured under a Liberty Mutual liability policy issued to Lyft and was logged into Lyft's network while transporting a passenger when the accident occurred. Thus, as a "motor vehicle" covered by liability insurance, the Liberty Mutual policy to Lyft was required to provide uninsured pedestrian PIP coverage benefits pursuant to N.J.S.A. 17:28-1.3. As the trial court correctly determined, the omission of PIP coverage in the Liberty Mutual policy is ineffective because "insurance policies omitting mandatory [PIP] coverage [be] amended to include it[.]" Am. Int'l Ins. Co. of Delaware v. 4M Interprise,

18

Inc., 431 N.J. Super. 514, 519 (App. Div. 2013) (citing Allstate Ins. Co. v. Malec, 104 N.J. 1, 6 (1986)). Since N.J.S.A. 17:28-1.3 requires all motor vehicle liability policies to include pedestrian PIP benefits, the Liberty Mutual policy was required to be reformed to include these benefits, and the trial court did not err by compelling reformation.

In sum, based upon the clear language in N.J.S.A. 17:28-1.3 and the liberal application we are to provide to coverage to those injured in motor vehicle accidents under the No-Fault Act, we conclude Liberty Mutual was required to provide uninsured pedestrian PIP coverage in the policy issued to Lyft, and the trial court properly determined the policy was required to be reformed to include such coverage to plaintiff.

We further reject Liberty Mutual's argument contending plaintiff's medical expenses would be covered under the liability endorsement of the Lyft policy. We conclude this argument is contrary to the stated purpose of this State's No-Fault Act, as outlined above, wherein medical benefits are provided to those injured in a motor vehicle accident, "without regard to fault," and are not based on a party's liability. N.J.S.A. 39:6A-1.1(b). In addition, the No-Fault Act was "enacted primarily to assure that injured plaintiffs are compensated promptly for medical treatment resulting from injuries received in an automobile accident." Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 324 (2000). If

19

Liberty Mutual's position is applied, uninsured injured pedestrians, such as plaintiff, may be required to pay their own medical expenses for reasonable and necessary medical treatment caused by an accident with a TNC motor vehicle upfront. A final determination as to liability may take months or even years of litigation before medical expenses are paid, if at all and later may result in a "no cause of action" verdict depending on the comparative negligence of the pedestrian. We conclude this procedure is contrary to the purpose of the No-Fault Act that permits an injured party to engage in immediate reasonable and necessary medical treatment caused by the accident regardless of fault with the costs to be covered by the applicable statutorily required PIP medical expense endorsement.

## B.

We next address Liberty Mutual's alternative argument, contending that N.J.S.A. 17:28-1.3 is inapplicable on its face because Zamor was the "named insured" of his personal vehicle, not Lyft, and the above statute only extends to "pedestrians who sustain bodily injury . . . caused by the named insureds motor vehicle." Liberty Mutual asserts since Zamor owned the vehicle and is the "named insured," that the trial court erred by requiring it to amend its policy issued to Lyft to provide pedestrian PIP benefits to plaintiff.

20

Liberty Mutual concedes this argument was not specifically raised before the trial court but argues because it is advancing an alternative theory on appeal based on the statutory language of N.J.S.A. 17:28-1.3 that we should consider such. We note, issues not raised in the trial court are deemed waived for appellate purposes unless they involve matters of great public importance. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

For the sake of completeness, we address this argument and remain unpersuaded. We reiterate that Zamor's vehicle classification at the time of the accident was a "personal vehicle" defined as "motor vehicle" and the TNC driver's vehicle "shall not be considered an automobile as defined in . . . 39:6A-2 while a transportation network company driver is providing a prearranged ride," see N.J.S.A. 39:5H-2. Here, it is undisputed that Zamor was logged onto the system and was providing a prearranged ride to a passenger at the time his vehicle stuck plaintiff. See N.J.S.A. 5H-10(c). Therefore, Lyft's "Business Policy" issued by Liberty Mutual was undisputably in effect at the time Zamor was operating his personal vehicle on behalf of Lyft when the accident occurred.

We determine under this scenario that the injuries to plaintiff were caused by the accident with Zamor's motor vehicle, which was covered by the Liberty Mutual liability policy issued to Lyft at the time accident, effectively making the vehicle Lyft's vehicle at this time. We conclude since Zamor was operating

21

the vehicle as a Lyft vehicle at the time of the accident, that Lyft was effectively and constructively the "named insured" of the vehicle pursuant to N.J.S.A. 39:6A-1.3. We conclude any other interpretation would be illogical and contrary to a principal purpose of the No-Fault statute, which requires coverage for an injured pedestrian's medical expenses without regard to fault.

We now turn to Liberty Mutual's contention that the trial court erred by relying on a DOBI order extending requirements under N.J.S.A. 17:28-1.3 to "Commercial Vehicle insurers." DOBI Order No. A15-106 specifically provides:

> 3. Starting on or before April 1, 2016, all Commercial Motor Vehicle insurers shall only issue and renew policies that contain coverage for stranger pedestrian PIP claims in accordance with N.J.S.A. 17:28-1.3.
>
> 4. By March 31, 2017, all commercial motor vehicle insurance policies issued in this State shall contain coverage for stranger pedestrian PIP claims in accordance with N.J.S.A. 17:28-1.3.

The trial court's reference to the DOBI Order, which requires all commercial motor vehicle insurers to provide pedestrian PIP coverage, was relevant because it is consistent with the statutory scheme we have discussed, including the overall intent of the Legislature providing that all auto insurance policies issuing liability coverage, including commercial vehicles, also must include PIP medical expense benefits. However, even if the DOBI Order is not considered,

22

we deem this issue moot as we have concluded the statutory mandate of N.J.S.A. 17:28-1.3 independently requires pedestrian PIP coverage for all motor vehicles, including Zamor's TNC personal vehicle herein.

III.

We next address Liberty Mutual's assertion that the trial court erred in denying its reconsideration motion and conclude there is no merit to this contention since we have determined that the court's underlying order denying Liberty Mutual's motion for summary judgment was not error and therefore, was not palpably incorrect nor arbitrary, capricious or unreasonable. R. 4:49-2; Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996).

Further, because Liberty Mutual has only appealed the aspect of the trial court's order denying its summary judgment motion and the court's order granting respondents' cross motions for summary judgment related to the reformation of Liberty Mutual's policy, we respectively decline to specifically address NJPLIGA's arguments, to the extent it is making such, concerning the coverages afforded by the UCJF when an uninsured pedestrian claimant is involved in an accident with a TNC vehicle. We limit this opinion to our holding that an insurer in the State of New Jersey is obligated to include uninsured pedestrian PIP coverage benefits in all TNC liability insurance policies issued in this State to a TNC covering a TNC driver's personal vehicle based on the

23

requirements set forth in N.J.S.A. 17:28-1.3, and the Lyft policy at issue was required to be reformed to include PIP coverage be afforded to plaintiff.

To the extent we have not addressed any of the parties' remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-2772-24